Withers, J.,
dissenting. By adverting to the report of this cause in 6 Rich. 334, it will be seen that under a bill in equity, Lewis Kirkland was charged as being accountable to the com,plainant (Oave) for certain trust funds; that he had laid out some of those funds in a negro named Nimrod, taking title to himself, and some in another negro named Oomba, taking title in the name of the trustee’ who was complainant. Among other things an injunction was asked to restrain Lewis Kirkland “from disposing of- any of the trust property, or of the property purchased with the trust fund.” A special injunction was ordered accordingly, and this defendant joined Lewis Kirkland in a bond, conditioned (inter alia) that Lewis Kirkland should cause the “two slaves, Nimrod and Comba, to be forthcoming to be subject to the final order of the Court of Equity,” in the cause of Cave against him. An account was taken, but the value of Comba and Nimrod was not charged, eo nomine, against Lewis Kirkland; the account in the aggregate became the decree of the Court. Action on the bond was also ordered upon a condition which occurred, and it was brought against the defendant, who was surety, and before Judge Evans he was held responsible for the entire amount of the decree in equity, upon the footing of another condition of the bond, to wit: “ that the said Lewis shall abide by and perform such orders and decrees as the said Court shall make in the said cause.” Upon appeal, this Court held that the “ decree in the cause,” perceiving that it embraced the entire liability of Lewis Kirkland in all the matters in litigation, was not the proper measure of liability and of damages as against William Kirkland, the surety and the defendant in action. It was perceived that the circuit doctrine would make the surety absolutely responsible for the whole debt and liability of the party defendant in that *360 jurisdiction, under cover of a special injunction, wbieb looked only to the security of certain property to be forthcoming to answer the final order of the Court in the cause; that, in such circumstances, he would be in far worse condition than a surety on a bond under writ of ne exeat, “ a proceeding of extreme rigor,” (vide Commissioner vs. Phillips, 2 Hill, 634); for, in the latter case, the surety would have the right to surrender the principal in exoneration of himself; that there was most palpable difference in a covenant to abide by and perform any decree in a case, and one to cause certain specified property to be forthcoming for that purpose. This Court construed the latter to be the obligation upon the defendant.
In the opinion formerly delivered, various arguments and Suggestions were offered to show the undue rigor of the rule adopted on the Circuit. They will not be made here the subjects of comment; but it does not seem to be intimated that no damages at law can be recovered against William Kirkland. If none can be recovered under the construction we give to the instrument, (mitigated towards the surety,) then it is of course a nonentity at law as against him. That is not supposed to be the opinion of the Court. The idea probably is, that some specific decree is required for the forthcoming of the specified property before the bond can be enforced. Why should that be held necessary ? The covenant is, that it shall be produced to answer a decree in the cause, not one relating to the property itself.
The better opinion probably is, that the judgment of the Court of Equity should have been produced requiring the production of the negroes. Then is not that found, with sufficient distinctness, in the decretal order of 14th February, 1851, in the words following: “ It is further ordered, that unless the said Lewis Kirkland do, by the fifth day of March next, fulfil the conditions of the bond given by him in- this cause, and dated 7th May, 1849, the Commissioner do put the said bond in suit.” When we remember that the bill had been taken 'pro *361 confesso, and that the bill had charged the specified negroes to be the exponent of a part of the trust funds which were decreed against, the principal in the bond, and when we advert to the condition of the bond, that they should be forthcoming to answer the decree, is it an unfair inference that the Court had decreed that they should be forthcoming on or before the day stated, and that a default in that behalf might, in the absence of satisfactory excuse, be a legal breach of the bond ? That decretal order must be considered the act of the Chancellor, for one clause decrees that defendant in the bill do pay costs. It is not doubted that it is entirely competent for the Commissioner or a Chancellor to secure by writ, in nature of a special injunction, the forthcoming of specific property having the earmark of a trust fund upon it — and to decree that it shall be produced by a day certain. It does appear to me that this has been done in this case; and, therefore, that the plaintiff should have been allowed to go to the jury. I agree that, as I am now advised, a writ and a bond obliging the defendant to give security generally for a debt or liability, or to stand to, abide by, and perform the decree in a cause, cannot be brought under the head of a special injunction. I agree also, that while the Court of Equity must regulate, unquestioned by a co-ordinate jurisdiction, its rules of practice, yet, that when one of its bonds comes to a Court of Common Pleas, it must meet there the rules of the Common Law. But I think this bond contained one condition not offensive to the Common Law, and that such proceedings were had in equity in relation thereto, as to warrant its Commissioner to go to the jury and show its breach.